# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

**United States of America,**

        **Plaintiff,**

**v.**

**Ricardo Lamar Rodrigues,**

        **Defendant.**

_____

Case No. 13-cr-0180 (JNE/JJG)

REPORT AND RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge

This case came before the undersigned United States Magistrate Judge for a pretrial motion hearing on September 11, 2013. Thomas M. Hollenhorst appeared on behalf of the United States of America, and Alejandro A. Espinosa appeared on behalf of Defendant Ricardo Lamar Rodrigues. The motions presently before the Court are Defendant's Motion to Suppress (ECF No. 29) and Motion to Dismiss (ECF No. 30). While the motions were docketed as two separate entries, the documents are identical.

The case was referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 to conduct a hearing and submit a report and recommendation to the Honorable Joan N. Ericksen, United States District Judge. Trial in this matter is set to commence on October 21, 2013.

## I. Procedural Background

An Indictment was filed against Defendant on July 16, 2013, charging him with Conspiracy to Distribute Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1); Attempted Possession with Intent to Distribute Actual

Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 2); Distribution of Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 3); Possession with Intent to Distribute Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 4); Using, Carrying, and Possessing Firearms During and in Relation to, and in Furtherance of, a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5); and Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 6). (Indictment, ECF No. 8.)

At the September 11 motion hearing, the Government called Drug Enforcement Administration Agent Travis Ocken to testify. The Government also introduced into evidence an application for a search warrant and a search warrant for a residence on Kyle Avenue North in Brooklyn Center, Minnesota. (Gov't Ex. 1.) Defendant's arguments for suppression and dismissal are that (1) the search warrant was not supported by probable cause; (2) officers who executed the search warrant exceeded its scope; (3) the search warrant failed to describe with particularity the things to be seized; and (4) Defendant was arrested without probable cause.

## II. Probable Cause for the Search Warrant

A search warrant was executed at Defendant's residence on Kyle Avenue North in Brooklyn Center, Minnesota, on June 17, 2013. Bloomington Police Officer T. Maloney provided the application and affidavit in support of the warrant.

### A. Facts Averred in Officer Maloney's Affidavit

Officer Maloney averred the following facts in his affidavit. Officer Maloney has worked as a Bloomington police officer since 2002 and is assigned to the Drug Enforcement Administration as a Task Force Officer. (Gov't Ex. 1 at 2.) In that position, he primarily investigates federal narcotics violations, and he has become familiar with the day-to-day

operations of narcotics trafficking organizations, importation and distribution methods, and means used to avoid detection by law enforcement. (*Id.*)

In approximately April 2013, a "cooperating defendant" ("CD") told Officer Maloney that he or she had purchased methamphetamine from Defendant for several years. (*Id.*) The CD had also personally seen Defendant engage in other drug transactions during which Defendant carried a small-caliber, semi-automatic handgun. (*Id.*) The CD knew that Defendant frequently received packages of methamphetamine from Arizona. (*Id.*) Other sources told law enforcement officers that associates of Defendant had transported narcotics in different vehicles associated with the Kyle Avenue residence and that one associate might have traveled to Arizona recently to purchase methamphetamine. (*Id.*)

Following up on this information, Officer Maloney contacted an investigator with the Drug Task Force, who advised Officer Maloney that a controlled delivery of methamphetamine had been conducted at the Kyle Avenue address in February 2013. (*Id.*) The package was intercepted by law enforcement, and Defendant was charged with possession of methamphetamine. (*Id.*) Officer Maloney also learned that Defendant lived with two other individuals at the Kyle Avenue address, Mark Anthony Selbitschka and Richard Henry Selbitschka. (*Id.*) Mark Anthony Selbitschka has a prior conviction for possession of a machine gun or short-barreled shotgun, and Richard Henry Selbitschka has a prior conviction for carrying a weapon without a permit, as well as prior drug arrests. (*Id.*)

Within seventy-two hours of the search warrant being executed at Defendant's residence, Officer Maloney arranged for the CD to engage in a controlled purchase of methamphetamine from Defendant. (*Id.*) The CD made a recorded telephone call to Defendant and arranged to meet Defendant at his house on Kyle Avenue. (*Id.*) Officer Maloney gave the CD pre-recorded buy

money and searched the CD's person and vehicle. (*Id.*) The CD then traveled to Defendant's house and entered through a side door. (*Id.*) Officer Maloney monitored the conversation between the CD and Defendant through a listening and recording device, and the officer overheard a conversation pertaining to drugs. (*Id.*) After the drug transaction was complete, the CD left Defendant's house and met Officer Maloney at a predetermined location. (*Id.*) The CD confirmed he had purchased methamphetamine from Defendant and gave the drugs to the officer. (*Id.*) The drugs tested positive for methamphetamine. (*Id.*)

On June 17, 2013, the day the search warrant was obtained but before it was executed, officers surveilling the Kyle Avenue address saw Defendant drive from the residence to a nearby gas station. (*Id.*) Defendant transferred a large, rolled object into another vehicle. (*Id.*) After Defendant drove away, he was stopped and arrested for the prior sale of a controlled substance. (*Id.*) A search of his person yielded a medication bottle containing several hydrocodone pills. (*Id.*) Defendant was transported to the Hennepin County Jail. (*Id.*)

**B.     Discussion**

The probable cause standard is a "practical, nontechnical concept[]." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). The duty of the judge who signs the warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In reviewing a search warrant for probable cause, the Court must give "great deference" to the issuing court's original determination. *Id.* at 236 (quotation omitted). If the issuing judge relied solely on the affidavit in assessing probable cause for the warrant, the reviewing court may consider "only that

4

information which is found within the four corners of the affidavit . . . in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982).

When probable cause is founded on information obtained from a confidential source, the primary concern "is whether the information is reliable." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Reliability can be established through independent corroboration or a track record of providing trustworthy information. *Id.* If information is independently corroborated, "then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Id.* Probable cause can be established through "[e]ven 'the corroboration of minor, innocent details'" *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (quoting *United States v. Ramos*, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987)).

Beginning with the reliability of the CD, the Court finds that the information obtained from this individual was independently corroborated and was therefore reliable. Officer Maloney corroborated the CD's initial information that Defendant was a methamphetamine dealer by arranging for the CD to purchase methamphetamine from Defendant in a controlled situation. Officer Maloney monitored the transaction and recovered a quantity of methamphetamine that Defendant had sold to the CD. In addition, Officer Maloney corroborated the CD's claim that Defendant received packages of methamphetamine in the mail through information obtained from another Drug Task Force member, who said that a controlled delivery of methamphetamine had been conducted at the Kyle Avenue address in February 2013. The CD's reported link between Defendant and Arizona was corroborated through information obtained from another law enforcement officer, who said that one of Defendant's associates may have recently traveled to Arizona to purchase methamphetamine.

The Court further finds that the affidavit, including the information from the CD, established probable cause for the warrant. The affidavit recounted in great detail the information obtained from the CD and the corroboration of that information, as well as information gathered through Officer Maloney's independent investigation. Most significant was the controlled purchase of methamphetamine less than seventy-two hours before the warrant was obtained. Based on the information in the affidavit, there was probable cause to believe that Defendant had been selling methamphetamine at the Kyle Avenue address and that Defendant had received packages of methamphetamine there. There was more than a fair probability that methamphetamine and related contraband would be found at the Kyle Avenue residence. The Court accordingly concludes that the search warrant was supported by probable case.

## III.  Particularity

Defendant argues the search warrant was insufficiently particular because firearms were not listed in the description of items on the search warrant, yet officers executing the warrant seized two firearms during the search. This argument is really a challenge to items seized beyond the scope of the warrant, but the Court will briefly discuss the particularity requirement.

The scope of a warrant must be defined with particularity. *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). The warrant must specify not only the place to be searched but also the items to be seized. U.S. Const. amend IV; *United States v. Riesselman*, 646 F.3d 1072, 1076 (8th Cir. 2011).

The search warrant in this case authorized law enforcement officers to seize

> Controlled substances including, but not limited to, cocaine, crack cocaine, marijuana, heroin, methamphetamine, and other controlled substances possessed without authority of law and other narcotics paraphernalia. Items to show constructive possession of above contraband such as miscellaneous identification, rent receipts and utility bills; instrumentalities used in the sale of

> controlled substances and records to substantiate same. Monies to show profit from sale, records and other ledger receipts to show a continued enterprise of the distribution of controlled substances. Documents tending to establish ownership and/or residency and/or possession and records tending to indicate controlled substance trafficking including but not limited to notes, notebooks, ledgers, and articles, devices, or media used to store data by electronic or photographic means and the data stored therein.

(Gov't Ex. 1 at 4.) The Court finds this description of items sufficiently particular.

## IV. Scope

Agent Ocken testified to the following relevant facts at the pretrial motion hearing. During the search of the Kyle Avenue residence, officers located a safe in the basement. Other residents at the scene told the officers that Defendant stored methamphetamine in the safe. The lock was forced open, and a weapon and methamphetamine were found inside. Officers found another weapon in a bedroom, which one of the other residents described as Defendant's room. Both weapons were seized.

Under the plain view doctrine, an officer may "seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *United States v. Hughes*, 940 F.2d 1125, 1126-27 (8th Cir. 1991) (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)) (internal quotation marks omitted).

First, officers did not violate the Fourth Amendment in arriving at the Kyle Avenue address. The officers were in possession of a valid warrant and followed its instructions as to the time and manner of execution.

Second, it is well-established that officers may seize guns discovered during a lawful search for drugs. *United States v. Montgomery*, 527 F.3d 682, 687 (8th Cir. 2008); *United States*

*v. Nichols*, 344 F.3d 793, 798-99 (8th Cir. 2003). There is probable cause to associate firearms with criminal activity. *See Hughes*, 940 F.2d at 1127; *United States v. Wayne*, 903 F.2d 1188, 1196 (8th Cir. 1990). Furthermore, as recounted in Officer Maloney's affidavit, the CD said that he or she had seen Defendant carry a handgun during drug transactions. In addition, officers found a gun located with the methamphetamine in the safe. "The incriminating nature of guns in close proximity to drugs and drug paraphernalia is immediately obvious." *Montgomery*, 527 F.3d at 687.

Third, once an officer enters a residence pursuant to a lawful warrant, the officer may lawfully search "all areas and containers in which the object of the search may be found." *Hughes*, 940 F.2d at 1127. Here, the items authorized by the search warrant included drugs, money, and paperwork, all of which could have been located in the safe or in Defendant's room. Thus, the officers had a lawful right of access to the firearms, and the firearms were not seized in violation of the Fourth Amendment.

## V. Probable Cause for Defendant's Arrest

Defendant was arrested on June 17, 2013, prior to the execution of the warrant. He contends he was arrested without probable cause. The facts leading up to Defendant's arrest were set forth in Officer Maloney's affidavit, as summarized in Part II.A. above. At the motion hearing, Agent Ocken testified that Defendant was arrested for the undercover sale of methamphetamine to the CD, not because of his conduct at the gas station. Agent Ocken also testified that Defendant was searched incident to the arrest and that hydrocodone and $400 in pre-recorded buy money were seized from his person.

Probable cause for "a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect

has committed or is committing a crime." *United States. v. Velazquez-Rivera*, 366 F.3d 661, 664 (8th Cir. 2004). An arrest warrant is not required to stop a vehicle in a public place and arrest a suspect riding inside, as long as there is probable cause for the arrest. *United States v. Czeck*, 105 F.3d 1235, 1238 (8th Cir. 1997). In the present case, arresting officers had probable cause to believe that Defendant had sold a quantity of methamphetamine to the CD less than seventy-two hours before. The transaction was a controlled purchase arranged and monitored by Officer Maloney, and the CD's reliability had been established through independent corroboration. Because officers had trustworthy information that Defendant had recently committed a crime, probable cause existed for his arrest. *See United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004).

## VI. Recommendation

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress (ECF No. 29) be **DENIED**; and
2. Defendant's Motion to Dismiss (ECF No. 30) be **DENIED**.

Dated: September 24, 2013                                *s/ Jeanne J. Graham*
                                                          JEANNE J. GRAHAM
                                                          United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **October 8, 2013**. A party may respond to the objections within fourteen days of the objections being filed. Any objections or responses filed under this rule shall not exceed 3,500 words. The district judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district judge is not required to

review a transcript of the hearing in order to resolve the objections, the party making the objections shall timely order and cause to be filed within fourteen days a complete transcript of the hearing.